1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

8

FOR THE EASTERN DISTRICT OF CALIFORNIA

9
10

11 | ELIZABETH WISE, et al.,

No. 1:17-cv-00853-DAD-EPG

12 |    Plaintiffs,

13 |   v.

ORDER GRANTING PLAINTIFFS' MOTION
FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

14 | ULTA SALON, COSMETICS &
FRAGRANCE, INC.,

(Doc. No. 42)

15
16 |    Defendant.

17

18    This matter came before the court on June 18, 2019, for hearing on the unopposed motion

19 for preliminary approval of a class action settlement brought on behalf of plaintiffs Elizabeth

20 Wise and Julie Zepeda ("plaintiffs").  (Doc. No. 42.)  Attorneys Robert Wasserman and Edward

21 Choi appeared telephonically on behalf of plaintiffs, and attorney Kai-Ching Cha appeared

22 telephonically on behalf of defendant.  For the reasons set forth below, plaintiffs' motion will be

23 granted.

24              **BACKGROUND**

25    Prior to the amendment of its practices in August 2018, defendant ULTA Salon,

26 Cosmetics & Fragrance, Inc.'s (hereinafter "ULTA") non-exempt California salon professionals

27 were paid in accordance with its Path to Abundance Salon Commission Plan Document ("PTA").

28 (Doc. No. 42-1 at 8.)  Under the PTA, salon professionals were paid the greater of either their

earned commissions or their hourly rate multiplied by the number of hours worked. (*Id.* at 8–9.) Salon professionals' commissions were calculated by multiplying the value of the salon services performed in a given week by the applicable commission percentage. (*Id.* at 9.)

In addition to providing salon services such as "cuts and colors," which increased their commission, salon professionals were required to perform tasks that did not increase their commission. (*Id.*) These tasks included, but were not limited to: (1) assisting in store duties, such as stocking retail displays and shelves; (2) adhering to ULTA standards for guest service and cleanliness, which included greeting and helping guests as well as cleaning the salon and doing laundry; and (3) managing other salon personnel. (*Id.*) In each pay period that salon professionals earned commission, they were not separately paid an hourly rate for this non-productive time, nor were they separately paid for rest breaks. (*Id.*)

Plaintiffs contend that ULTA failed to provide rest breaks, to pay separately and hourly for rest breaks and non-productive time, and to pay overtime and penalties for non-compliant meal and rest breaks at the correct rate. (*Id.*) According to plaintiffs, based on these alleged violations, ULTA also failed to provide accurate itemized wage statements to salon professionals and to pay all wages due and owed at the end of their employment. (*Id.*) Plaintiffs further contend that these violations constitute unfair business practices and subject ULTA to civil penalties and injunctive relief under the Private Attorneys General Act (hereinafter "PAGA").

Plaintiff Wise filed this class action on June 23, 2017, asserting causes of action for: (1) failure to provide paid rest periods; (2) failure to pay separately and hourly for rest and recovery periods and other non-productive time; (3) failure to pay premiums for non-compliant meal and break periods at the correct rate; (4) failure to pay overtime at the correct rate; (5) failure to provide accurate itemized wage statements; and (6) violation of Business and Professions Code Section 17200. (Doc. No. 1.) On November 22, 2017, plaintiff Wise filed a first amended complaint adding claims for failure to pay all wages due upon termination of employment and for civil penalties pursuant to the PAGA. (Doc. No. 15.)

Plaintiff Zepeda filed a separate class action in Orange County Superior Court on November 13, 2017. (18-cv-00750, Doc. No. 1-1.) Therein, plaintiff Zepeda asserted causes of

action for: (1) failure to provide accurate itemized wage statements; (2) failure to pay overtime at the correct rate; (3) failure to timely pay wages; and (4) violation of Business and Professions Code Section 17200. (*Id.*) Plaintiff Zepeda's case was removed to the United States District Court for the Central District of California on December 14, 2017, and was transferred to the Eastern District of California on June 4, 2018. (18-cv-00750, Doc. Nos. 1, 27.) On August 8, 2018, plaintiff Zepeda's case was consolidated with plaintiff Wise's action. (18-cv-00750, Doc. No. 31.)

Between August 2017 and March 2018, the parties engaged in formal and informal discovery. (Doc. No. 42-1 at 10.) Plaintiffs requested, and ULTA provided, discovery regarding the size and scope of the class; the policies, practices, and procedures responsible for the alleged violations; and the damages that resulted therefrom. (*Id.*) In March 2018, the parties participated in a private mediation with mediator Mark Rudy. (*Id.*) Although they were presented with a mediator's proposal at the end of the mediation, the parties were unable to reach a settlement agreement and the litigation continued at that time. (*Id.* at 10–11.)

Between March 2018 and February 2019, the parties engaged in further formal and informal discovery as a result of which plaintiffs were ultimately provided with verified responses to all the discovery they requested. (*Id.* at 11.) In December 2018, class counsel traveled to Chicago to complete a 30(b)(6) deposition on critical topics. (*Id.*) In January 2019, class counsel again traveled to Chicago to depose Michael Savage, ULTA's Vice President of Total Rewards and Talent Acquisition. (*Id.*) In addition, ULTA completed a round of written discovery in both cases and deposed both named plaintiffs. (*Id.*)

On January 24, 2019, the parties participated in a second mediation with mediator Steven Serratore. (*Id.* at 12.) The parties were again unable to reach a settlement at the mediation. (*Id.*) Over the two weeks that followed, however, mediator Serratore had numerous communications with the parties, including a joint telephone conference on February 1, 2019. (*Id.*) On February 4, 2019, mediator Serratore provided the parties with a detailed mediator's proposal. (*Id.*) On February 7, 2019, both parties accepted that proposal. (*Id.*) On May 14, 2019, the parties executed the settlement agreement currently before the court. (*Id.*)

Pursuant to the proposed settlement agreement, plaintiffs seek to certify a class of "all current and former non-exempt California ULTA Salon Professionals who earned commissions, non-discretionary bonuses and/or additional hourly compensation under Defendant's Path to Abundance Salon Commission Plan Document during at least one pay period between December 30, 2016 and August 25, 2018." (Doc. No. 42-3, Class Action Settlement Agreement and Release of Claims ("Settlement Agreement") at 4.) Through this settlement class, plaintiffs seek to recover for "all claims for failure to provide rest periods, failure to pay separately and hourly for rest and recovery periods and other non-productive time, failure to pay premiums for non-compliant meal and rest periods at the correct rate, failure to pay overtime, failure to provide accurate itemized wage statements," as well as for failure to pay all wages due and owed at the termination of employment. (*Id.* at 14.)

Under the proposed settlement, defendant would pay a maximum settlement amount of $3,400,000. (*Id.* at 5.) The agreement provides for the following allocation of that amount: (i) $16,000 for the fees and costs of the Settlement Administrator; (ii) a payment to the LWDA in the amount of $56,250 as its share of the settlement for civil penalties pursuant to the PAGA; (iii) $20,000 in service payments to plaintiffs, with each receiving $10,000; (iv) $60,000 to be paid to class counsel for reasonable costs; (v) attorney's fees of $1,133,333.33 (one-third of the settlement amount); and (vi) the remaining net settlement amount of $2,114,416.67 to be distributed to class members. (*Id.* at 7.) The net settlement amount will be distributed to class members based on the number of pay periods during which each class member earned commission, non-discretionary bonuses and/or additional hourly compensation under defendant's Path to Abundance Plan Document during the class period. (*Id.* at 11.) No submission of a claim form will be required for participating class members to receive their settlement shares. (*Id.*)

The proposed settlement also provides that the settlement amount is non-reversionary. (*Id.* at 6.) Any funds associated with checks that have not been cashed after the expiration of 180 days will be redistributed to the *cy pres* beneficiaries, Court Appointed Special Advocates for Children of San Joaquin and Court Appointed Special Advocates for Children of Los Angeles. (*Id.* at 10.) Each designated beneficiary will receive fifty percent of the uncashed funds. (*Id.*)

4

Plaintiffs seek an order from this court: (1) preliminarily certifying the class for purposes of settlement, with appointment of plaintiff as class representatives, appointment of plaintiffs' counsel as class counsel, and approval of Simpluris, Inc. as the settlement administrator; (ii) preliminarily approving the settlement agreement; (iii) approving the proposed form and method of notice to be disseminated to the class; and (iv) scheduling the hearing date for the final approval of the class settlement. (Doc. No. 42.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) mandates that, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The following procedures apply to the court's review of the proposed settlement:

> The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> . . .
>
> Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

*Id.*

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation and internal quotations omitted). To protect the rights of absent class members, Rule 23(e) requires that the court approve all class action settlements "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Bluetooth*, 654 F.3d at 946. However, when parties seek approval of a settlement agreement negotiated prior to formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Bluetooth*, 654 F.3d at 946. Thus, the court must review such agreements with "a more probing inquiry" for evidence of collusion or other

conflicts of interest than what is normally required under the Federal Rules. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

Review of a proposed class action settlement ordinarily proceeds in three stages. *See* Manual for Complex Litigation (4th) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266–67 (9th Cir. 2010).

Here, the parties move for preliminary class certification and preliminary approval of a class action settlement. Though Rule 23 does not explicitly provide for such a procedure, federal courts generally find preliminary approval of settlement and notice to the proposed class appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *see also Dearaujo v. Regis Corp.*, Nos. 2:14-cv-01408-KJM-AC, 2:14-cv-01411-KJM-AC, 2016 WL 3549473 (E.D. Cal. June 30, 2016) ("Rule 23 provides no guidance, and actually foresees no procedure, but federal courts have generally adopted [the process of preliminarily certifying a settlement class].");  Newberg on Class Actions § 13:13 (5th ed. 2011).

### DISCUSSION

**A. Preliminary Certification of Class**

Plaintiffs seek preliminary certification of the proposed settlement class under Rule 23 of the Federal Rules of Civil Procedure.

1          1.  Rule 23(a) Requirements

2          "Rule 23(a) establishes four prerequisites for class action litigation:  (1) numerosity,

3     (2) commonality, (3) typicality, and (4) adequacy of representation."  *Staton v. Boeing Co.*, 327

4     F.3d 938, 953 (9th Cir. 2003).  The court will address each requirement below.

5               *a.  Numerosity*

6          A proposed class must be "so numerous that joinder of all members is impracticable."

7     Fed. R. Civ. P. 23(a)(1).  The numerosity requirement demands "examination of the specific facts

8     of each case and imposes no absolute limitations."  *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446

9     U.S. 318, 330 (1980).  Courts have found the requirement satisfied when the class comprises of as

10    few as thirty-nine members, or where joining all class members would serve only to impose

11    financial burdens and clog the court's docket.  *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D.

12    468, 474 (E.D. Cal. 2010) (citing *Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir.), *vacated

13    on other grounds*, 459 U.S. 810 (1982)) (discussing Ninth Circuit thresholds for numerosity); *In

14    re Itel Secs. Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981).

15         Here, plaintiffs assert that there are 1,843 members in the settlement class.  (Doc. No. 42-

16    1 at 17.)  The class is readily ascertainable because all class members have worked for ULTA and

17    can be easily identified through defendant's employee and payroll records.  (*Id.*)  This showing

18    with respect to numerosity is adequate to meet the requirements of Rule 23(a)(1).  *See, e.g.*,

19    *Collins v. Cargill Meat Sols. Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) ("Courts have routinely

20    found the numerosity requirement satisfied when the class comprises 40 or more members.").

21              *b.  Commonality*

22         Rule 23(a) also requires "questions of law or fact common to the class."  Fed. R. Civ. P.

23    23(a)(2).  To satisfy the commonality requirement, the class representatives must demonstrate

24    that common points of facts and law will drive or resolve the litigation.  *Wal-Mart Stores, Inc. v.

25    Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification . . . is not the raising of

26    common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to

27    generate common answers apt to drive the resolution of the litigation.") (internal citations

28    omitted).  "Commonality is generally satisfied where . . . 'the lawsuit challenges a system-wide

practice or policy that affects all of the putative class members.'" *Franco v. Ruiz Food Prods., Inc.*, No. CV 10-02354 SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)). The rule does not require all questions of law or fact to be common to every single class member. *See Hanlon*, 150 F.3d at 1019 (noting that commonality can be found through "[t]he existence of shared legal issues with divergent factual predicates"). However, the raising of merely any common question does not suffice. *See Dukes*, 564 U.S. at 349 ("[a]ny competently crafted class complaint literally raises common 'questions.'") (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–132 (2009)).

Here, plaintiffs argue that the alleged California Labor Code violations are common to each member of the class. (Doc. No. 42-1 at 18.) The proposed class action stems from the same factual and legal issues, including: (1) whether ULTA provided paid rest breaks; (2) whether ULTA provided separate and hourly pay for rest breaks and non-productive time; (3) whether ULTA provided overtime and meal and rest premiums at the correct rate; and (4) whether additional violations resulted therefrom. (*Id.*) Because it appears that the same conduct which defendant allegedly engaged in "would form the basis of each of the plaintiff's claims," the court finds that commonality is satisfied. *Murillo*, 266 F.R.D. at 475 (citing *Acosta v. Equifax Info. Servs., L.L.C.*, 243 F.R.D. 377, 384 (C.D. Cal. 2007) (internal quotation marks omitted)).

### c. Typicality

Rule 23(a)(3) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Armstrong*, 275 F.3d at 868. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868; *see also Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 (9th Cir. 1995) (claims are typical where named plaintiffs have the same claims as other members of the class and are not subject to unique defenses). While representative claims must be "reasonably co-extensive with those of absent class members," they "need not be substantially identical."

*Hanlon*, 150 F.3d at 1020; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiffs are members of the class identified in the settlement agreement. Plaintiffs worked for ULTA during the relevant time period, were subjected to the same uniform policies under the PTA and, even if they were not serving as class representatives, would be members of the class. (Doc. Nos. 42-1 at 18; 42-7 at 2.) Thus, plaintiffs' claims arise from the same factual basis and are based upon the same legal theories as those applicable to class members. (*Id.*) The court concludes that plaintiffs' claims are reasonably co-extensive with those of the settlement class, and that typicality is therefore satisfied here.

### d. Adequacy of Representation

The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000); *see also Pierce v. County of Orange*, 526 F.3d 1190, 1202 (9th Cir. 2008).

The proposed class representatives, plaintiffs Wise and Zepeda, seemingly have no conflicts of interests adverse to those of the class members and are committed to vigorously prosecuting the case on behalf of the class. (Doc. Nos. 42-1 at 18; 42-7 at 2.) Moreover, plaintiffs' counsel have provided declarations representing that they have no conflicts of interest and are experienced litigators who are fully qualified to pursue the interests of the class. (Doc. Nos. 42-2, 42-5, 42-6, 42-8, 42-9, 42-10.) As such, the court finds that names plaintiffs and plaintiffs' counsel satisfy the adequacy of representation requirement.

### 2. Rule 23(b)(3) Requirements

In addition to the requirements of Rule 23(a), Rule 23(b)(3) requires: (i) that the questions of law or fact common to class members predominate over any questions affecting only individual members; and (ii) that a class action is superior to other available methods for fairly

9

and efficiently adjudicating the controversy. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). The test of Rule 23(b)(3) is "far more demanding," than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24). The court examines each requirement in turn below.

### a. Predominance

First, common questions must "predominate" over any individual questions. While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is much higher at this stage of the analysis. *Dukes*, 564 U.S. at 359; *Amchem*, 521 U.S. at 624–25; *Hanlon*, 150 F.3d at 1022. While Rule 23(a)(2) can be satisfied by even a single question, Rule 23(b)(3) requires convincing proof the common questions "predominate." *Amchem*, 521 U.S. at 623–24; *Hanlon*, 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Plaintiffs contend that all class members during the class period were subject to the same policies and procedures of defendant and, thus, share a common nucleus of operative facts and potential legal remedies. (Doc. No. 42-1 at 19.) In this case, common questions about ULTA's policies and practices predominate over individual questions because class members were: (1) paid under ULTA's PTA; (2) subject to ULTA's alleged unlawful practices and Labor Code violations; and (3) able to seek the same form of damages and penalties. (*Id.*) Class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3). *See Palacios v. Penny Newman Grain*, No. 1:14-cv-01804, 2015 WL 4078135, at *5–6 (E.D. Cal. July 6, 2015); *see also Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. CV-10-3873-JST RZX, 2011 WL 320998, at *7 (C.D. Cal. Jan. 27, 2011). The predominance requirement has therefore been met in this case.

### b. Superiority

Rule 23(b)(3) also requires a court to find "a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In resolving the

Rule 23(b)(3) superiority inquiry, "the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class action—although the last two considerations are not relevant in the settlement context." *See Palacios*, 2015 WL 4078135, at *6 (citing *Schiller v. David's Bridal Inc.*, No. 10-0616, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012)).

By consolidating approximately 1,843 potential individual actions into a single proceeding here, plaintiffs argue that the class action device enables more efficient management of this litigation for the court and the litigants alike. (Doc. No. 42-1 at 19.) Plaintiff also argues that, absent class treatment, the cost of litigation would far exceed the potential recovery for each individual class member with small, but potentially meritorious claims. These reasons are persuasive, and warrant finding that the superiority requirement is also satisfied here.

**B. Preliminary Fairness Determination**

Plaintiffs also seek the preliminary approval of the proposed settlement. Under Rule 23(e), a court may approve a class action settlement only if the settlement is fair, reasonable, and adequate. *Bluetooth*, 654 F.3d at 946. "[P]reliminary approval of a settlement has both a procedural and substantive component." *See, e.g., In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079 (citing *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561, 570 n.12 (E.D. Pa. 2001)). In particular, preliminary approval of a settlement and notice to the proposed class is appropriate if: (i) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and (ii) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class. *Id.*; *see also Ross v. Bar None Enters., Inc.*, No. 2:13–cv–00234–KJM–KJN, 2014 WL 4109592, at *9 (E.D. Cal. Aug. 19, 2014). However, a district court reviewing a proposed settlement is not to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute." *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

/////

1          1.  <u>Procedural Fairness</u>

2          The court must consider whether the process by which the parties arrived at their

3   settlement is truly the product of arm's length bargaining, rather than collusion or fraud.  *Millan*

4   *v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. May 31, 2016).  A settlement is

5   presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation."  *Adoma*

6   *v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms.*

7   *Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

8          As noted above, in March 2018, the parties participated in a mediation with mediator

9   Mark Rudy.  (Doc. No. 42-1 at 10.)  Since the parties were unable to reach a settlement at the first

10  mediation, on January 24, 2019, the parties participated in a second mediation with mediator

11  Steven Serratore.  (*Id.* at 12.)  Although the parties were again unable to reach a settlement at that

12  time, mediator Serratore had numerous communications with the parties thereafter.  (*Id.*)  On

13  February 7, 2019, both parties accepted mediator Serratore's detailed proposal and subsequently

14  executed a settlement agreement on May 4, 2019.  (*Id.*)  Plaintiffs contend that the settlement

15  agreement is the product of arms-length negotiations reached after nearly two years of somewhat

16  contentious litigation and two mediations.  (*Id.* at 8.)

17         Plaintiffs also represents that the settlement agreement was reached after undertaking

18  extensive investigation, research, and informal discovery to evaluate the strengths and value of

19  the class' claims.  (*Id.*)  These efforts included, but were not limited to:  (1) obtaining and

20  reviewing plaintiffs' personnel files, payroll records, and time records; (2) researching ULTA, its

21  organization, and the number of its stores; (3) identifying, researching, and pleading the

22  appropriate claims; (4) exhausting administrative remedies; (5) identifying, requesting, securing,

23  and reviewing pertinent policies, practices, and procedures; (6) identifying, requesting, and

24  securing the payroll records of each and every class member for the entire class period; (7)

25  retaining an expert to analyze the data and supervising the calculations rendered as a result; (8)

26  reviewing the expert's findings; (9) separately calculating the damages of a sampling of class

27  members to confirm the accuracy of the expert's findings; (10) creating a reliable damages

28  /////

1  model; and (11) developing and implementing a strategy for mediation and settlement. (*Id.* at

2  11.)

3  　　　　Based on these representations, the court concludes that the parties' negotiation which

4  resulted in the proposed settlement constituted genuine, informed, arm's length bargaining.

5  　　　　2.  Substantive Fairness

6  　　　　　　a.  *Adequacy of the Settlement Amount*

7  　　　　To evaluate the fairness of the settlement award, the court should "compare the terms of

8  the compromise with the likely rewards of litigation." *See Protective Comm. for Indep.*

9  *Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968). "It is well-

10  settled law that a cash settlement amounting to only a fraction of the potential recovery does not

11  per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

12  454, 459 (9th Cir. 2000). To determine whether a settlement "falls within the range of possible

13  approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs'

14  expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust*

15  *Litig.*, 484 F. Supp. 2d at 1080.

16  　　　　The total proposed settlement is for $3,400,000. (Settlement Agreement at 12.) The

17  portion of the settlement allocated to the settlement class is an estimated $2,114,416.67. (*Id.*)

18  Plaintiffs also estimate that defendant's maximum possible damages exposure with respect to the

19  settlement class is approximately $22,185,065 including liquidated damages, interest and

20  penalties. (Doc. 42-1 at 23.) However, plaintiffs argue that the realistic total damages recovery

21  for the settlement class is, at most, $7,830,576.20. (*Id.* at 24.) The proposed allocation of

22  $2,114,416.67 to settle the claims of the class thus represents between 9.53 percent and 27

23  percent of plaintiffs' maximum and realistic possible recovery, respectively.[1] (*Id.* at 21.) District

24  courts in California have found similar percentage recoveries to be reasonable for this purpose in

25  other cases under the circumstances presented. *See, e.g.*, *Villegas v. J.P. Morgan Chase & Co.*,

26

27  ───────────────
[1] The court has arrived at these percentages based upon the amount of the proposed settlement
allocated to the class and not, as class counsel has, based upon the maximum settlement amount
28  under the proposed agreement. (*See* Doc. No. 42-1 at 21.)

No. 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (settlement of approximately 15 percent preliminarily fair); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (settlement of approximately 25 to 35 percent was reasonable). Accordingly, the settlement amount proposed here is not per se unreasonable.

Although plaintiffs allege that the class is entitled to a total possible recovery between $7,830,576.20 and a maximum of $22,185,065, plaintiffs argue that a discount of the total possible recovery is appropriate here given ULTA's: denial of plaintiffs' allegations in their entirety; contention that it complied with the law; and assertion of numerous affirmative defenses. (Doc. No. 42-1 at 9.) Specifically, ULTA has contended that salon professionals were paid an hourly rate for every hour worked, and that this hourly rate could increase based on productivity. (*Id.*) ULTA has also asserted that the PTA was an hourly pay plan of the type authorized by *Certified Tire and Service Centers Wage and Hour Cases*, 28 Cal. App. 5th 1 (2018). (*Id.*) Because ULTA contends that salon professionals were paid hourly for each hour worked, it also has taken the position that it provided paid rest breaks and paid its salon professionals for all hours worked in compliance with California law. (*Id.*) ULTA also maintains that it properly calculated overtime and properly paid meal and rest break premiums at its employees' base hourly rate. (*Id.*) ULTA contends that it acted in good faith and that its conduct was not willful such that neither waiting time nor statutory penalties are available to the class under either California Labor Code §§ 203 or 226(e), respectively. (*Id.*) Finally, ULTA intended to file a motion for summary adjudication on the *Certified Tire* issue which, if successful, would have undermined plaintiffs' claims and significantly reduced any possible recovery for the class. (*Id.*)

In light of these anticipated defenses and the risks to the plaintiff class posed thereby, the court finds the proposed settlement to be reasonable and will preliminarily approve the amount offered to settle plaintiffs' claims.

### b. PAGA Penalties

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of herself and other current or former employees. Cal. Lab. Code

*/////*

§ 2699(a).[2]  A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies."  *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009).

The PAGA statute requires trial courts to "review and approve" any settlement of PAGA claims.  Cal. Lab. Code § 2699(*l*)(2).[3]  In the absence of authority governing the standard of review of PAGA settlements, the LWDA has in one action provided some guidance to the court.  *See* California Labor and Workforce Development Agency's Comments on Proposed PAGA Settlement, *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC (N.D. Cal. Jul. 29, 2016), ECF No. 736 at 2–3.  There, where both class action and PAGA claims were covered by a proposed settlement, the LWDA acknowledged that it was "not aware any existing case law establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action" but stressed that:

> when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*Id.*; *see also O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (same).

Recognizing the distinct issues presented by class actions, this court is nevertheless persuaded by the LWDA's reasoning expressed in *O'Connor* and therefore adopts its proposed standard in evaluating the PAGA-related settlement agreement now before the court.  Accordingly, the court will approve a settlement of PAGA claims upon a showing that the settlement terms (1) meet the statutory requirements set forth by PAGA, and (2) are

/////

/////

/////

---

[2]  An "aggrieved employee" is defined as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."  Cal. Lab. Code § 2699(c).

[3]  The proposed settlement must also be submitted to the California Labor and Workforce Development Agency ("LWDA") at the same time it is submitted to the court.  *Id.*

fundamentally fair, reasonable, and adequate[4] in view of PAGA's public policy goals.

Here, in accordance with the statute's requirements, plaintiffs submitted a copy of their settlement agreement to the LWDA.[5]  (*See* Doc. No. 42-4.)  The proposed settlement agreement allocates $75,000 to plaintiffs' PAGA claims.  (Settlement Agreement at 7.)  Of that amount, 75 percent, or $56,250, will be paid to the LWDA, and 25 percent, or $18,750, will be returned to the portion of the settlement allocated to the class members. [6]  (*Id.*)  The allocation of the PAGA claims accounted for ULTA's replacement of the PTA with the Optimization Plan and revision of its wage statements.  (Doc. No. 42-1 at 27.)  To date, the LWDA has not commented on or objected to this settlement of the PAGA claims.  As such, the court preliminarily approves the PAGA penalties in the settlement as fair, reasonable, and adequate in light of the public policy goals of PAGA.

    *c. Attorneys' Fees*

When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement.  *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002).  At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *Bluetooth*, 654 F.3d at 941; *see also Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 (9th Cir. 1999).  Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994).  As a

---

[4]  The court's determination as to fairness, reasonableness, and adequacy may involve a balancing of several factors including but not limited to the following:  the strength of plaintiffs' claims; the risk, expense, complexity, and likely duration of further litigation; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; and the experience and views of counsel.  *See Officers for Justice v. Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

[5]  The proposed settlement was sent to the agency when it was submitted to the court as required.  *See* Cal. Lab. Code § 2699(l)(2).

[6]  Civil penalties recovered under PAGA are distributed between the LWDA (75 percent) and the aggrieved employees (25 percent).  *Id.* § 2699(i).

16

result, the district court must assume a fiduciary role for the class members in evaluating a request for an award of attorney fees from the common fund. *Id.*; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009).

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id.*; *Vu v. Fashion Inst. of Design & Merch.*, No. CV 14-08822 SJO (EX), 2016 WL 6211308, at *5 (C.D. Cal. Mar. 22, 2016). Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. *Id.* In the Ninth Circuit, a twenty-five percent of the common fund award is the "benchmark" amount of attorneys' fees, but courts may adjust this figure upwards or downwards if the record shows "special circumstances justifying a departure." *Id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). Percentage awards of between twenty and thirty percent are common. *See Vizcaino*, 290 F.3d at 1047; *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after thorough application of either the lodestar or twelve-factor method."). Nonetheless, an explanation is necessary when the district court departs from the twenty-five percent benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).

To assess whether the percentage requested is reasonable, courts may consider a number of factors, including:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while

> litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015) (internal quotation marks omitted). The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942.

Here, plaintiffs' claims are based on state law, because of which California law governs the award and calculation of attorneys' fees. *See Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1024 (9th Cir. 2003) ("An award of attorneys' fees incurred in a suit based on state substantive law is generally governed by state law."). Under California law, "[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method." *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003) (internal quotation marks and citations omitted). The court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case. *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The Ninth Circuit has recommended that district courts apply one method but cross-check the appropriateness of the amount by employing the other as well. *See In re Bluetooth*, 654 F.3d at 944.

Here, the proposed settlement provides that class counsel will seek an award of attorneys' fees not to exceed one-third, or $1,133,333.33, which represents thirty-three percent of the total settlement amount of $3,4000,000. (Settlement Agreement at 8.) This fee amount is above the 25% benchmark for this circuit. *See Bluetooth*, 654 F.3d at 947; *Six (6) Mexican Workers*, 904 F.2d at 1311; *Staton*, 327 F.3d at 952 n.15. However, this percentage is not unreasonable as an upper bound. As such, the court approves the attorneys' fee request on a preliminary basis. *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% even after

thorough application of either the lodestar or twelve-factor method.").  In connection with the final fairness hearing, the court will cross check the requested amount with the lodestar amount based upon counsel's submission and determine whether this amount of attorneys' fees is fair and reasonable here.

### d.  Incentive Payment

While incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *West Publ'g Corp.*, 563 F.3d at 958–59; *Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments.").  Such payments are to be evaluated individually, and should look to factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation."  *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).  Such awards must be "scrutinize[d] carefully . . . so that they do not undermine the adequacy of the class representatives."  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).  Thus, incentive awards which are explicitly conditioned on the representatives' support for the settlement, as well as those that are significantly higher than the average amount awarded pursuant to the settlement, should often not be approved.  *Id.* at 1164–65.  The core inquiry is whether an incentive award creates a conflict of interest, and whether plaintiffs "maintain a sufficient interest in, and nexus with, the class so as to ensure vigorous representation."  *In re Online DVD-Rental*, 779 F.3d at 943.

Here, plaintiffs have requested an incentive award of $20,000, with each named plaintiff receiving $10,000.  (Settlement Agreement at 8.)  In support of this request, plaintiffs contend that they worked diligently with class counsel throughout the litigation of this case, including taking numerous calls, participating in formal discovery and the parties' informal information exchange, sitting for depositions, and participating in mediations and settlement negotiations.

(Doc. No. 42-1 at 29.)  Plaintiffs also contend that they undertook significant reputational risk by bringing suit against their former employers.  (*Id.*)

An incentive award of $20,000 amounts to 0.6 percent of the overall settlement amount of $3,400,000.  In comparison, under the net settlement amount of $2,114,416.67 for the class, each of the 1,843 class members would receive an average payment of "approximately $1,147.27." (Doc. No. 42-2 at 9.)  This is in line with other incentive awards that have been approved by the undersigned.  *See, e.g.*, *Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (awarding $15,000 in total incentive payments from a $4.5 million fund, or 0.33 percent of the fund, where average class recovery was approximately $500); *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018, at *9 (E.D. Cal. Feb. 27, 2017) (approving incentive payments to two named plaintiffs that, combined, equaled approximately 0.68 percent of the fund); *Taylor v. FedEx Freight, Inc.*, No. 1:13-cv-01137-DAD-BAM, 2016 WL 6038949, at *8 (E.D. Cal. Oct. 13, 2016) (awarding lowered incentive payment of $15,000, or 0.4 percent of the fund).  Because the court finds that the proposed incentive award is reasonable, the court approves it on a preliminary basis.  At the final approval hearing, the court will review plaintiffs' evidence that the requested incentive award is warranted here—i.e., evidence of the specific amount of time plaintiff spent on the litigation, the particular risks and burdens carried by plaintiff as a result of the action, or the particular benefit that plaintiff provided to counsel and the class as a whole throughout the litigation.  *See Bautista v. Harvest Mgmt. Sub LLC*, No. CV 12-10004 FMO (CWx), 2013 WL 12125768, at *15 (C.D. Cal. Oct. 16, 2013).

### e.  Release of Claims

Finally, the release proposed as part of the settlement appropriately tracks the claims at issue in this case.  The proposed settlement defines "Released Claims" and "Released PAGA Claims" as:

> [A]ll claims for failure to provide paid rest periods, failure to pay separately and hourly for rest and recovery periods and other non-productive time, failure to pay premiums for non-compliant meal and rest periods at the correct rate, failure to pay overtime, failure to provide accurate wage statements, and failure to pay all wages

> due and owing at the end of employment . . . that were or could have been pled based upon factual allegations contained in the Class Action, which arose between December 30, 2016 and August 25, 2018.

> [A]ll claims based upon alleged violations of the Private Attorneys' General Act . . . from December 30, 2016 through August 25, 2018.

(Settlement Agreement at 14.)  As such, the released claims track plaintiffs' claims in this action and the settlement does not release unrelated claims that class members have against defendant. *Cf. Bond v. Ferguson Enter., Inc.*, No. 1:09-cv-01662-OWW-MJS, 2011 WL 284962, at *7 (E.D. Cal. Jan. 25, 2011) ("This form of release is overbroad by arguably releasing all unrelated claims up to the date of the Agreement.").

### C. Proposed Class Notice and Administration

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e).").  For a class certified under Federal Rule of Civil Procedure 23(b)(3), the notice must contain, in plain and easily understood language, (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may appear through an attorney if desired; (5) that the court will exclude members who seek exclusion; (6) the time and manner for requesting an exclusion; and (7) the binding effect of a class judgment on members of the class.  Fed. R. Civ. P. 23(c)(2)(B).  A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 561 F.3d 566, 575 (9th Cir. 2004) (internal quotations and citations omitted).

Here, the proposed settlement provides that notice shall be mailed to all class members at their last known address within ten days after the preliminary approval date.  (Settlement Agreement at 11.)  ULTA shall prepare the name, last known address, social security number, dates of employment, and the number of pay periods relevant to each class member for the Settlement Administrator.  (*Id.*)  The proposed class notice also sets out the means and deadlines

for class members to object to the proposed settlement and/or to be excluded from the settlement. (*Id.* at 12.) The court finds that the manner of notice proposed by plaintiffs appears to be the "best notice that is practicable under the circumstances" and therefore meets the requirements of Federal Civil Procedure Rule 23(c)(2)(B).

In addition, plaintiffs have proposed the following implementation schedule:

| a. | Defendant to provide class list to the Administrator. | Within 10 calendar days of the court's execution of the Order Granting Preliminary Approval. |
| b. | Administrator to mail class notice. | Within 10 calendar days of its receipt of the Class List from ULTA. |
| c. | Deadline for Class Members to object or opt out of the Settlement. | Within 45 calendar days after the mailing of the Class Notice. |
| d. | Plaintiffs to file Motion for Attorneys' Fees, Costs and Service Payments. | Not less than 35 calendar days after the mailing of the Notice. |
| e. | Deadline for Plaintiffs to file Motion for Final Approval. | Not less than 28 calendar days before the Final Approval hearing. |
| f. | Final Approval Hearing. | Not less than 95 days after the Court's execution of the Order Granting Preliminary Approval. |

(Doc. No. 42-1 at 17.)

The court finds that the notice and the manner of notice proposed by plaintiffs meets the requirements of Federal Civil Procedure Rule 23(c)(2)(B) and that the proposed mail delivery is also appropriate.

/////

/////

/////

/////

**CONCLUSION**

For the reasons stated above, plaintiffs' motion for preliminary approval of class action settlement (Doc. No. 42) is granted, and:

1.  Preliminary class certification under Rule 23 is approved;

2.  Plaintiffs' counsel Mayall Hurley P.C., Polaris Law Group, LLP, Law Offices of Choi & Associates, and Hyun Legal, APC are appointed as class counsel;

3.  The named plaintiffs, Elizabeth Wise and Julie Zepeda, are appointed as class representatives;

4.  The proposed notice conforms with Federal Rule of Civil Procedure 23 and is approved;

5.  Simpluris, Inc. is approved as claims administrator;

6.  The proposed settlement detailed herein is approved on a preliminary basis as fair and adequate;

7.  The hearing for final approval of the proposed settlement is set for December 17, 2019 at 9:30 a.m. before the undersigned in Courtroom 5, with the motion for final approval of class action settlement to be filed at least twenty-eight (28) days in advance of the final approval hearing, in accordance with Local Rule 230; and

8.  Plaintiffs' proposed settlement implementation schedule is adopted.

IT IS SO ORDERED.

Dated: __**August 21, 2019**__

_Dale A. Drozd_

UNITED STATES DISTRICT JUDGE