1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ELIZABETH WISE, et al.,                 Lead Case No.      1:17-cv-00853-DAD-EPG

12              Plaintiffs,                   Member Case No.  1:18-cv-00750-DAD-BAM

13       v.                                   ORDER GRANTING FINAL APPROVAL OF
                                              CLASS ACTION SETTLEMENT AND
14   ULTA SALON, COSMETICS &                  AWARDING ATTORNEYS' FEES, COSTS,
     FRAGRANCE, INC.,                         AND INCENTIVE PAYMENTS
15
                Defendant.
16                                            (Doc. Nos. 49, 51)

17

18          This matter came before the court on December 17, 2019, for hearing on plaintiffs'

19   motion for final approval of a class action settlement and motion for attorneys' fees.  (Doc. Nos.

20   49, 51.)  Attorney Robert Wasserman appeared telephonically for plaintiff Elizabeth Wise and the

21   class, attorneys Dennis Hyun and Edward Choi appeared in person for plaintiff Julie Zepeda and

22   the class, and attorney Julie Stockton appeared telephonically for defendant ULTA Salon,

23   Cosmetics & Fragrance, Inc. ("ULTA").  For the reasons that follow, the court will grant final

24   approval of the class action settlement and will award attorneys' fees and costs as requested.[1]

25                                       **BACKGROUND**

26          The relevant factual background leading up to this court's order granting preliminary

27   approval was adequately addressed in the court's prior orders and will not be repeated here.  (*See,*

28   _____
     [1]  The court apologizes to the parties for its delay in issuing this order.

                                                   1

*e.g.*, Doc. No. 48 at 1–5.)  On October 14, 2020, plaintiffs filed the pending unopposed motion for attorneys' fees, and on November 19, 2020, plaintiffs filed the pending unopposed motion for final approval of the class action settlement.  (Doc. Nos. 49, 51.)

### FINAL CERTIFICATION OF CLASS ACTION

The court has evaluated the standards for class certification in its prior order granting preliminary approval of the settlement and has found certification warranted.  (*See* Doc. Nos. 48 at 7–23.)  Since no additional issues concerning class certification have been raised, the court will not repeat its prior analysis here, and finds no basis to revisit any of the analysis contained in that order.  The court finds that final class certification in this case is appropriate.  The following class is therefore certified:  all current and former non-exempt California ULTA Salon Professionals who earned commissions, non-discretionary bonuses and/or additional hourly compensation under ULTA's Path to Abundance Salon Commission Plan Document during at least one pay period between December 30, 2016 and August 25, 2018.  (*See* Doc. No. 51-1 at 13–14.)  In addition, the following plaintiffs are confirmed as class representatives:  Elizabeth Wise and Julie Zepeda.  (*See id.* at 19–20.)  The law firms of Mayall Hurley P.C., Polaris Law Group, LLP, Law Offices of Choi & Associates, and Hyun Legal, APC are appointed as class counsel.  Simpluris, Inc. is confirmed as the settlement administrator.

### FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Class actions require the approval of the district court prior to settlement.  Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.").  This requires that:  (i) notice be sent to all class members; (ii) the court hold a hearing and make a finding that the settlement is fair, reasonable, and adequate; (iii) the parties seeking approval file a statement identifying the settlement agreement; and (iv) class members be given an opportunity to object.  Fed. R. Civ. P. 23(e)(1)–(5).  The settlement agreement in this action was previously filed on the court docket (*see* Doc. No. 42-3), and class members have been given an opportunity to object thereto (*see* Doc. No. 51-3 at 6).  The court now turns to the adequacy of notice and its review of the settlement following the final fairness hearing.

2

**A.     Notice**

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)). Any notice of the settlement sent to the class should alert class members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery." *Hanlon*, 150 F.3d at 1025. It is important for class notice to include information concerning the attorneys' fees to be awarded from the settlement, because it serves as "adequate notice of class counsel's interest in the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 n.15 (9th Cir. 2003) (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993)) (noting that where notice references attorneys' fees only indirectly, "the courts must be all the more vigilant in protecting the interests of class members with regard to the fee award").

The court previously reviewed the notice of class certification in this case at the preliminary approval stage and found it to be satisfactory. (Doc. No. 48 at 21–22.) Following the grant of preliminary approval, the settlement administrator mailed the notice of settlement to the 1,843 class members on the class list provided by defendant. (Doc. No. 51-1 at 21.) After 208 of those notices were returned as undeliverable, the settlement administrator performed an "advanced search" on each of those 208 addresses to locate current addresses and was able to locate 197 updated addresses to which the settlement administrator promptly mailed the notice. (*Id.*) After resending the notices, only eleven notices were ultimately returned to the settlement administrator as undeliverable, which is less than one percent of all the notices sent. (*Id.*)

Given the above, the court concludes adequate notice was provided to the class here. *See Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (court need not ensure all class members receive actual notice, only that "best practicable notice" is given); *Winans v. Emeritus Corp.*, No.

13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23 requires that 'reasonable effort' be made to reach all class members, it does not require that each individual actually receive notice."). The court accepts the reports of the settlement administrator and finds sufficient notice has been provided satisfying Federal Rule of Civil Procedure 23(e)(1).

## B.    Final Fairness Hearing

On January 8, 2019, the court held a final fairness hearing, at which class counsel and defense counsel appeared. No class members, objectors, or counsel representing the same appeared at the hearing. For the reasons explained below, the court now determines that the settlement reached in this case is fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2).

In assessing the fairness of a class action settlement, courts balance the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir. 2009). These settlement factors are non-exclusive, and each need not be discussed if they are irrelevant to a particular case. *Churchill Vill., L.L.C.*, 361 F.3d at 576 n.7. While the Ninth Circuit has observed that "strong judicial policy . . . favors settlements," *id.* at 576 (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)), where the parties have reached a settlement agreement prior to class certification, the court has an independent duty on behalf of absent class members to be vigilant for any sign of collusion among the negotiating parties. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (noting "settlement class actions present unique due process concerns for absent class members," because the "inherent risk is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee") (internal quotations and citations omitted).

In particular, where a class action settlement agreement is reached prior to a class being certified by the court, "consideration of these eight *Churchill* factors alone is not enough to

4

survive appellate review." *Id.* at 946–47. District courts must be watchful "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* at 947. These more subtle signs include: (i) "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded"; (ii) the existence of a "clear sailing" arrangement, which provides "for the payment of attorneys' fees separate and apart from class funds," and therefore carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class"; and (iii) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* (internal citations and quotations omitted). The Ninth Circuit has also recognized that a version of a "clear sailing" arrangement exists when a defendant expressly agrees not to oppose an award of attorneys' fees up to an agreed upon amount. *Lane v. Facebook, Inc.*, 696 F.3d 811, 832 (9th Cir. 2012); *In re Bluetooth*, 654 F.3d at 947; *In re Toys R Us-Delaware, Inc.–Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) ("In general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling.") (quoting *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991)).

While this court has wide latitude to determine whether a settlement is substantively fair, it is held to a higher procedural standard and "must show it has explored comprehensively all factors, and must give a reasoned response to all non-frivolous objections." *Allen v. Bedolla*, 787 F.3d 1218, 1223–24 (9th Cir. 2015) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)). Thus, while the court should examine any relevant *Churchill* factors, the failure to review a pre-class certification settlement for those subtle signs of collusion identified above may constitute error. *Id.* at 1224–25.

1.      <u>Strength of Plaintiffs' Case</u>

When assessing the strength of plaintiffs' case, the court does not reach "any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of this

litigation" because evidence has not been fully presented. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989). Instead, the court is to "evaluate objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach these agreements." *Id.*

Here, class counsel represents that recovery on the merits in this case is uncertain. (Doc. No. 51-1 at 25; *see also* Doc. No. 48 at 14.) Although class counsel believe that a trier of fact could conclude that ULTA engaged in the violations alleged by the class, they acknowledge that ULTA contends that it complied with the applicable law, and asserts numerous affirmative defenses, which would detract from plaintiffs' recovery even if they were ultimately successful. (Doc. No. 51-1 at 25.) For example, ULTA argues that salon professionals were paid an hourly rate for every hour worked, that this hourly rate could increase based on productivity, and that the PTA was an hourly pay plan of the type authorized by the court in *Certified Tire and Service Centers Wage and Hour Cases*, 28 Cal. App. 5th 1 (2018). (*Id.*) Because ULTA contends that salon professionals were paid hourly for each hour worked, it also has taken the position that it provided paid rest breaks and paid its salon professionals for all hours worked in compliance with California law. (Doc. No. 42-1 at 9.) ULTA also maintains that it properly calculated overtime and properly paid meal and rest break premiums at its employees' base hourly rate. (*Id.*) ULTA contends that it acted in good faith and that its conduct was not willful such that neither waiting time nor statutory penalties are available to the class under either California Labor Code §§ 203 or 226(e), respectively. (*Id.*)

Therefore, it appears that while plaintiffs have potentially meritorious claims, it is far from certain that they would have prevailed on those claims, given the various affirmative defenses that defendant intended on asserting and the difficulty in proving defendant's engagement in willful conduct. The court finds that consideration of this factor weighs in favor of granting final approval of the settlement in this action.

2.     <u>Risk, Expense, Complexity, and Likely Duration of Further Litigation</u>

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir.

2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  As a result, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain results." *Johnson v. Shaffer*, No. 2:12-cv-1059-KJM-AC, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, No. 1:09-cv-00704-AWI-JLT, 2011 WL 5511767, at *10 (E.D. Cal. Nov. 10, 2011)).  Employment law class actions are, by their nature, time-consuming and expensive to litigate.  *Hightower v. JPMorgan Chase Bank, N.A.*, No. CV 11-1802 PSG (PLAx), 2015 WL 9664959, at *6 (C.D. Cal. Aug. 4, 2015).

Here, plaintiffs have expressed their serious concerns regarding the potential expense and duration of further litigation in this action, including a significant amount of anticipated additional discovery, including depositions of class members.  (Doc. No. 51-1 at 26.)  Moreover, class certification remains highly contested between the parties, and plaintiffs believe that an even "more difficult motion for summary judgment" was anticipated and that absent a settlement, both class certification and that anticipated summary judgment motion would likely result in continued litigation, delays, and potential appeals.  (*Id.*)  By contrast, the proposed settlement in this action provides compensation that is available now, without the additional time and risk of decisions that would likely be subject to lengthy appeals processes.  Thus, consideration of this factor also weighs in favor of granting final approval.

### 3. The Amount Offered in Settlement

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation."  *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968).  "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  To determine whether a settlement "falls within the range of possible approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

/////

Here, the proposed settlement is for a common fund of $3,400,000.00. The common fund provides for: (1) $10,000.00 enhancement awards to each of the representative plaintiffs; (2) payment of attorneys' fees to class counsel in the amount of one-third (1/3) of the common fund, or $1,133,333.33; (3) class counsel's costs and expenses of approximately $44,825.32; (4) settlement administration fees to Simpluris, Inc. of $16,000; and (5) a PAGA payment to the California Labor and Work Force Development Agency of $56,250.00. (Doc. No. 51-1 at 13, 16–17.) Plaintiffs have calculated that if these consolidated cases were to proceed to trial and they were to prevail on every claim presented, the maximum damages to be awarded the class members would be somewhere between $7,830,576.20 and $22,185,062.00. (*Id.* at 27.)

"After deducting the costs of administering the Settlement, the payment to the LWDA, the Service Payment to Plaintiffs, and the fees and costs of Class Counsel, the Net Settlement amount of $2,129,591.35 will be distributed to Participating Class Members." (Doc. No. 51-1 at 13.) Based on the number of class members, plaintiffs "estimate[] that the *average* payment to each Participating Class Member[] will be approximately $1,156.75, and the highest payment will be more than $5,080." (*Id.* at 27.) Each individual class member's share "will be apportioned based upon the number of pay periods worked in which the Participating Class Member earned commissions, non-discretionary bonuses and/or additional hourly compensation under ULTA's Path to Abundance Salon Commission Plan Document." (*Id.* at 14.) The court has previously assessed the fairness and adequacy of the settlement and found that the amount offered in settlement of this action also weighs in favor of final approval. (*See* Doc. No. 48.)

      *a.     PAGA Penalty Claims*

Civil penalties recoverable under PAGA are being settled here for $75,000.00, of which 75%, or $56,250.00, will be paid to the Labor Workforce Development Agency ("LWDA") and 25%, or $18,750.00, will be returned to the common fund for distribution to class members. (Doc. No. 51-1 at 16.) In the class action context, where PAGA claims are also often brought, a district court must independently determine that a proposed settlement agreement is "fundamentally fair, adequate and reasonable" before granting approval. *See Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *see*

*also In re Heritage Bond Litigation*, 546 F.3d 667, 674–75 (9th Cir. 2008).  The LWDA has provided some guidance regarding court approval of PAGA settlements.  *See* California Labor and Workforce Development Agency's Comments on Proposed PAGA Settlement ("LWDA Comments"), *O'Connor v. Uber Techs., Inc.*, No. 3:13-cv-03826-EMC (N.D. Cal. Jul. 29, 2016), Doc. No. 736 at 2–3.  In *O'Connor*, where both class action and PAGA claims were covered by a proposed settlement, the LWDA stressed that

> It is [] important that when a PAGA claim is settled, the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, [it is important that] the court evaluate whether the settlement meets the standards of being "fundamentally fair, reasonable, and adequate" with reference to the public policies underlying the PAGA.

*Id.*

The proposed $75,000.00 penalty payment in this case represents approximately two percent of the estimated $3.4 million gross settlement amount and will be allocated across the entire class.  Judges of this court have previously approved comparable PAGA penalties in other class actions.  *See Syed v. M-I, L.L.C.*, No. 1:12-cv-01718-DAD-MJS, 2017 WL 714367, at *13 (E.D. Cal. Feb. 22, 2017) (approving $100,000 PAGA penalty for a California class with a $3.95 million gross settlement payment); *Garcia v. Gordon Trucking, Inc.*, No. 1:10-cv-0324-AWI-SKO, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (approving $10,000 PAGA penalty for a California class with a $3.7 million gross settlement payment).  Having reviewed the parties' submission and the terms of the proposed settlement, the court finds that the settlement amount related to plaintiffs' PAGA claims is fair, reasonable, and adequate in light of the public policy goals of PAGA.

Because of the concrete risks attendant with the pursuit of further litigation in this action articulated above, the court finds that the amount offered in settlement of the PAGA claims here weighs in favor of final approval of the settlement.

4.    Extent of Discovery Completed

The court must also consider whether the process by which the parties arrived at their settlement is truly the product of arm's length bargaining, rather than collusion or fraud.  *Millan*

9

*v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015). A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)). Thus, approval of a class action settlement "is proper as long as discovery allowed the parties to form a clear view of the strength and weaknesses of their case." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

Here, the parties engaged in significant and comprehensive discovery and data exchange, including the propounding of interrogatories and the taking of depositions. (Doc. No. 51-1 at 11, 28.) Plaintiffs, for example, propounded and ULTA responded to discovery "regarding the size and scope of the class; the policies, practices, and procedures responsible for the alleged violations; and the damages that flow[ed] therefrom." (*Id.* at 28.) Based on that discovery, the parties twice engaged in formal mediation efforts, both times before well-respected employment class action mediators, and the second of which ultimately led to the settlement agreement now pending for final approval. (*Id.*) Both named plaintiffs were deposed. (*Id.* at 11.) Class counsel represents that this discovery took considerable time and effort to obtain and was critical to informing the settlement discussions. (*Id.* at 28.) Based on these representations by counsel, the court is satisfied that the parties' negotiation constituted genuine and informed arm's length bargaining.

Accordingly, the court concludes that consideration of this factor also weighs in favor of granting final approval.

### 5. Experience and Views of Counsel

Shareholders from the law firms of Mayall Hurley P.C., Polaris Law Group, LLP, Law Offices of Choi & Associates, and Hyun Legal, APC, the law firms that collectively serve as class counsel in this action, have filed declarations in support of the motion for preliminary approval, detailing their extensive experience in litigating wage and hour class actions. (Doc. Nos. 42-2 at 14–16; 42-5 at 8–9; 42-6 at 4–6; 42-8 at 2–3; 42-9 at 9–11; 42-10 at 9–10.) Based on their experience and qualifications, investigation of the disputed factual and legal issues involved in

this case, and evaluation of the risks of continued litigation, each of these attorneys have concluded that this settlement is fair and reasonable. (*Id.*) Consideration of class counsel's experience and expressed opinions in this regard also weighs in favor of final approval of the settlement.

      6.      <u>Reaction of the Class to Proposed Settlement</u>

The absence of objections to a proposed class action settlement in this case strongly supports the conclusion that the settlement is fair, reasonable, and adequate. *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement.") (citing cases); *Barcia v. Contain-A-Way, Inc.*, No. 07cv938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009).

According to the declaration of Jarrod Salinas, case manager at Simpluris, Inc., no member of the class has filed an objection to the settlement pending before the court for final approval. (Doc. No. 51-3 at ¶ 11.) Similarly, no class members appeared at the final fairness hearing to raise any objections to the settlement. Accordingly, consideration of this factor weighs significantly in favor of granting final approval.

      7.      <u>Subtle Signs of Collusion</u>

The court now turns to a review of whether any of the "more subtle signs" of collusion recognized by the Ninth Circuit are present here. *See In re Bluetooth*, 654 F.3d at 947. The award of attorneys' fees sought here—one-third of the settlement fund—is on the high end of amounts typically awarded in the Ninth Circuit. *See Id.* (setting a 25 percent benchmark); *Staton*, 327 F.3d at 952 (same); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (same); *see also Morales v. Stevco, Inc.*, No. 1:09-cv-00704-AWI-JLT, 2011 WL 5511767, at *12 (E.D. Cal. Nov. 10, 2011) ("The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark.") (quoting *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000)). That said, the proposed attorneys' fees award in this case is not disproportionate to the monetary distribution that the class will receive, and there is notably no reversionary clause in the settlement agreement.

1  The court is therefore satisfied that the settlement is not the product of collusion.

2         In sum, the count finds, after considering all of the relevant factors, that this settlement is

3  fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e).

4                    **ATTORNEYS' FEES, EXPENSES, AND INCENTIVE PAYMENTS**

5  **A.      Attorneys' Fees**

6         This court has an "independent obligation to ensure that the award [of attorneys' fees],

7  like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In*

8  *re Bluetooth*, 654 F.3d at 941.  This is because, when fees are to be paid from a common fund, the

9  relationship between the class members and class counsel "turns adversarial."  *In re Mercury*

10 *Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply*

11 *Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994).  As such, the district court assumes a

12 fiduciary role for the class members in evaluating a request for an award of attorneys' fees from

13 the common fund.  *Id.*; *see also Rodriguez v. Disner*, 688 F.3d 645, 655 (9th Cir. 2012); *West*

14 *Publ'g Corp.*, 563 F.3d at 968.

15        In a diversity action such as this, federal courts apply state law both to determining the

16 right to fees and the method of calculating them.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

17 1047 (9th Cir. 2002); *Mangold v. Cal. Public Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

18 The California Supreme Court has clarified that the percentage-of-fund method of calculating

19 attorneys' fees remains appropriate under California law.  *Laffitte v. Robert Half Int'l Inc.*, 1 Cal.

20 5th 480, 503–06 (2016).  Thus, under California law a court "may determine the amount of a

21 reasonable fee by choosing an appropriate percentage of the fund created."  *Id.* at 503.  The

22 California Supreme Court also suggested that considerations of the risks and potential value of

23 the litigation, the contingency, novelty, and difficulty of the litigation, the skill shown by counsel,

24 and a lodestar cross-check are all appropriate means of discerning an appropriate percentage

25 award in a common fund case.  *Id.* at 504.  Notably, while the California Supreme Court has

26 recognized the Ninth Circuit's 25 percent benchmark for percentage awards in common fund

27 cases, it did not adopt such a benchmark under California law.  *Id.* at 495, 503–06.  In common

28 fund percentage award cases, the Ninth Circuit has similarly provided a non-exhaustive list of

factors to be considered in assessing the reasonableness of the award, including:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954–55 (quoting *Vizcaino*, 290 F.3d at 1047–50) (internal quotation marks omitted). The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942.

Here, plaintiffs' attorneys seek an award of attorneys' fees equal to one-third of the common fund, or $1,133,333.33. (Doc. No. 49-1 at 8.) Numerous factors support this requested award. This litigation was pursued purely on a contingency-fee basis, and plaintiffs' counsel devoted approximately 1,375 hours and $44,825.32 in out-of-pocket expenses to litigating the case for almost four years. (*Id.* at 21.) Absent successful resolution, none of this attorney time would have been compensated. *See Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance."). Plaintiffs' attorneys also successfully vindicated the rights of over eighteen hundred workers and secured more than three million dollars in immediate monetary relief as well as succeeding in obtaining ULTA's commitment to amend its policies, practices, and procedures associated with the payment of its non-exempt California employees, resulting in employees receiving "millions of dollars in additional compensation over the next few years." (*Id.* at 18.) Further, counsel for plaintiffs are seasoned and experienced litigators of wage-and-hour class actions. Finally, and as noted above, no class member has objected to the requested fee award. Consideration of each of these factors supports a 33% of the common fund award of attorneys' fees here.

The court next turns to the lodestar amount, in order to cross-check the reasonableness of the requested attorneys' fee award. Beyond simply the multiplication of a reasonable hourly rate by the number of hours worked, a lodestar multiplier is often applied. "Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van*

1    *Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco*

2    *Enters., Inc.*, 118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 NEWBERG ON CLASS ACTIONS

3    § 14.7 (courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or

4    even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re*

5    *Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998)

6    ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the

7    lodestar method is applied.") (quoting NEWBERG).

8       Here, plaintiffs' counsel have submitted declarations indicating that nine different

9    attorneys from the four firms making up class counsel in this action have worked on this case for

10    time totaling over 1,375 hours. (*See* Doc. Nos. 49-3; 49-4; 49-5; 49-6; 49-7.) These attorneys

11    billed at rates of $455 for associates and between $700 and $894 for senior counsel, partners, and

12    shareholders. (*Id.*) These rates are higher than those previously accepted by the undersigned as

13    reasonable. *See, e.g.*, *Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13-cv-00474-

14    DAD-BAM, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017) (adopting as reasonable rates

15    between $370 and $495 for associates and $545 and $695 for senior counsel and partners). Since

16    hourly rates will be used solely for the purpose of cross-checking the percentage of the common

17    fund awarded as attorneys' fees, the court will not define precisely the appropriate rates for this

18    district here. Moreover, the court need not resolve whether the rates requested by class counsel

19    are reasonable because as plaintiffs note even "[i]f class counsel's hourly rates are reduced to a

20    range previously approved by this Court, . . . the[] lodestar figure would equal $853,707.35 and a

21    modest multiplier of 1.328 would cause it to exceed the $1,133,333.33." (Doc. No. 49-1 at 26.)

22    This calculations appears to be accurate. Thus, whether plaintiff's hourly rates are employed or if

23    instead they are considered with a modest multiplier, the lodestar cross-check supports the

24    requested award of $1,133,333.33 in attorneys' fees, an amount equal to one-third of the total

25    fund in this case.

26    **B.**     **Expenses of Class Counsel**

27       Additionally, class counsel seeks to recover the costs expended on this litigation. Expense

28    awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client

and should be reasonable and necessary." *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). These can include reimbursements for: "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees." *Id.*

Here, plaintiffs' counsel requests reimbursement of their expenses in the amount of $44,825.32. (Doc. No. 49-1 at 27.) The court finds all the expenses incurred to be reasonable and will approve their reimbursement in the amount requested.

## C.     Incentive Award

While incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59; *Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments."). Such payments are to be evaluated individually, and in considering the amount of such awards the court should look to factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)); *see also Rodriguez*, 563 F.3d at 958–59.

Here, plaintiffs seek an incentive award of $10,000 for each of the two named plaintiffs in these consolidated actions. (Doc. No. 49-1 at 27.) In their declarations, plaintiffs' counsel have described how each named plaintiff expended a great deal of time and effort in assisting co-class counsels' prosecution of this case. For example, both named plaintiffs responded to discovery requests, prepared and appeared for their depositions, and participated in both mediations (plaintiff Zepeda telephonically, and plaintiff Wise in person), as well as in the subsequent settlement negotiations. (Doc. Nos. 49-1 at 13–14; 49-6 at 8–9.) Moreover, under the settlement, each named plaintiff will enter into a broader release of claims than all other class members.

(Doc. No. 49-1 at 29.)  Finally, as noted above, no member of the class has filed an objection to the settlement.  Considering these factors, the court finds that an incentive award of $10,0000 for each of the named plaintiffs is appropriate under the circumstances of this case.

**CONCLUSION**

For the reasons stated above:

1.  Plaintiffs' motion for final approval of this class action settlement (Doc. No. 51) is granted, the settlement class is certified, and the court approves the settlement as fair, reasonable, and adequate;

2.  Plaintiffs' motion for attorneys' fees, costs, and incentive awards (Doc. No. 49) is granted, and the court awards the following sums:

    a.    Class counsel shall receive $1,133,333.33 in attorneys' fees, and up to $44,825.32 in expenses, with any unspent funds attributed to expenses being returned to the common fund;

    b.    Named plaintiffs shall each receive $10,000.00 as incentive payments;

    c.    Simpluris, Inc. shall receive $16,000.00 in settlement administration costs and expenses; and

    d.    The parties shall direct payment of 75 percent of the settlement allocated to the PAGA payment, or $56,250.00, to the California Labor and Workforce Development Agency, as required by California law, and the remainder of the PAGA payment, or 18,750.00, shall be included in the class fund;

3.  All parties are directed to abide by the settlement agreement, including any deadlines or procedures for distribution included therein, and take all necessary steps to complete and administer the settlement in accordance therewith; and

4.  The court retains jurisdiction over this action to consider any further applications arising out of or in connection with the parties' settlement.

IT IS SO ORDERED.

Dated:  **March 26, 2020**                         

UNITED STATES DISTRICT JUDGE